UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CASE No. 1:08-cr-53

    HON. ROBERT J. JONKER

MARTINIQUE ROGERS,

    Defendant.

_____/

## OPINION REGARDING DEFENDANT ROGERS'S FIRST STEP ACT MOTION

### INTRODUCTION

Defendant Rogers pleaded guilty to a Section 841(b)(1)(A) drug offense and a perjury offense in June of 2008. The 2.30 kilograms of crack cocaine attributable to him and his criminal history score placed his guidelines at 292 to 365 months imprisonment on the chart, well above the ten-year mandatory minimum penalty then applicable to him.

The matter before the Court is Defendant Rogers's motion for modification or reduction in sentence under the newly enacted First Step Act. (ECF No. 31). The Court appointed counsel to assist Defendant Rogers with his motion, and both sides have filed briefs. The government responds that Defendant Rogers is not eligible for a reduced sentence based on the quantity of crack cocaine attributed to him in the PSR. The defense replies by averring that the First Step Act provides a free-standing remedy that permits a discretionary reduction in Defendant Rogers's sentence.

The Court finds that Defendant Rogers is eligible for relief under the First Step Act. After considering all relevant information of record, including without limitation the lower guidelines that could apply to Defendant today, and Defendant's record in the Bureau of Prisons, the Court exercises its discretion to provide a limited reduction in Defendant Rogers's sentence as provided in this Opinion and corresponding Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Offense Conduct*

In November 2006, an officer with the Battle Creek Police Department performed a traffic stop on a vehicle in which Ms. Nekia Miller was the driver and Defendant Rogers was a passenger. After it was discovered neither of them had a driver's license, the officer placed the two in his patrol vehicle and searched the car. He discovered four cellular telephones, and a plastic grocery bag containing a substance that tested positive for crack cocaine. Later lab testing confirmed the field test and concluded the crack cocaine weighed 283.07 grams.

Initially Ms. Miller stated the crack cocaine belong to her. She waived her Miranda rights and repeated her admission to the interviewing officers. Defendant Rogers also waived his Miranda rights and stated he had no knowledge of the crack cocaine. And later, on January 25, 2007, Defendant Rogers testified under oath in front of a grand jury that the crack cocaine seized from the vehicle was not his, and that he did not know the drugs were in the vehicle until the police discovered them. These initial statements were not true. In fact, the drugs belonged to Defendant Rogers, not Ms. Miller, as both later admitted. The initial story was concocted at Defendant Rogers's behest in hopes he could avoid the added exposure of a new drug crime in light of his previous conviction history.

Ms. Miller's brother, Daniel Miller, was also interviewed by the DEA. Daniel Miller told the DEA that he had purchased crack cocaine from Mr. Rogers on at least four occasions, and each time he purchased between 1/8 and 1 ounce of crack cocaine. Daniel Miller had also seen Defendant Rogers on two separate occasions with a "brick," or kilogram, of crack cocaine.

### 2. Charge & Plea

Defendant Rogers was charged in a three-count indictment on February 28, 2008, with one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of crack cocaine (Count 1); one count of actual possession of fifty grams or more of crack cocaine (Count 2); and one count of perjury for the false testimony before the grand jury (Count 3).

On June 30, 2008, Defendant Rogers pleaded guilty to Count 1 and Count 3 under the terms of a written plea agreement. (ECF Nos. 14 & 15). Under the terms of the plea agreement, the government agreed to move to dismiss the remaining charge in the indictment at sentencing; not to oppose Defendant's request for a reduction in his offense level for acceptance of responsibility; and not to file a Section 851 notice alleging that Defendant had more than one prior felony drug conviction.[1]

### 3. PSR & Sentencing

The two counts of conviction were grouped for purposes of sentencing.[2] The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Rogers was responsible for 2.30 kilograms of crack cocaine. The quantity of narcotics triggered an initial base

---

[1] At the time, a defendant convicted under Section 841(b)(1)(A)(iii) with two or more prior felony drug convictions was subject to a mandatory term of life imprisonment.

[2] The PSR determined Count 1 was the most serious count, and thus the offense level as calculated under the drug guidelines took precedence. It appears to the Court that remains true even after applying the relief afforded by the First Step Act. In any event, neither side argues the First Step Act permits the Court to disturb Defendant's sentence or conviction with respect to Count 3.

offense level of 36.  (PSR ¶ 51).  Two levels were added for obstruction of justice (PSR ¶ 55), resulting in an adjusted offense level of 38.  (PSR ¶ 56).  After adjusting downward for acceptance of responsibility, the total drug offense level was 35.  (PSR ¶ 67).

The PSR also determined that Defendant Rogers qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions for controlled substance offenses.  Since the statutory maximum penalty for the offense of conviction was life under Section 841(b)(1)(A)(iii), the guidelines called for a career offender offense level of 34, after adjusting for acceptance of responsibility.  *See* U.S.S.G. § 4B1.1(b)(A).  Since the offense level of 35 calculated under the drug guidelines was higher, however, that level took precedence and became Defendant's Total Offense Level.  (PSR ¶ 35).

The officer then scored Defendant's criminal history at fourteen points, resulting in a criminal history category of VI.[3]  (PSR ¶¶ 89, 90).  The guideline range for a total offense level of 35 and criminal history category of VI was 292 to 365 months.  (PSR ¶ 146).  The perjury conviction with respect to Count 3 was limited to a statutory maximum of 60 months.

At the October 8, 2008, sentencing hearing the defense withdrew an objection to the base level offense of 36.  Defendant Rogers still did not admit the full 2.30 kilograms of crack attributed to him in the PSR, but did agree the proper quantity was at least 1.5 kilograms, which was sufficient to trigger offense level 36.  The Court proceeded to grant the government's motion under Section 5K1.1 of the sentencing guidelines.  That resulted in a two-level reduction in Defendant Rogers's offense level, and a guideline range of 235 to 293 months.  The Court imposed a sentence of 240 months imprisonment on Count 1 and 60 months imprisonment on Count 3, concurrent with

---

[3] Because Defendant was a career offender, his criminal history was also required to be category VI.

4

Count 1. The Court also imposed a five-year term of supervised release on Count 1 and a three-year concurrent term of supervised on Count 3. Judgment entered on October 17, 2008. (ECF No. 26).

### 4. *Post Sentencing Matters*

Defendant Rogers did not appeal his conviction or sentence. He has also not filed any post-conviction motions or actions seeking collateral relief. The only post-sentencing matter took place in 2009 when the government moved for a sentence reduction under Federal Rule of Criminal Procedure 35. (ECF No. 27). The Court agreed with the recommended one-level departure, which suggested a new guideline range of 210 to 262 months (Level of Offense 32, Criminal History VI). The Court went on to reduce Defendant's sentence to 210 months imprisonment with respect to Count 1. The sentence remained unchanged in all other respects. (ECF No. 29).

According to the BOP, Defendant Rogers is currently scheduled to be released from imprisonment on June 19, 2023.

### 2. **The Fair Sentencing Act of 2010**

A little less than two years after Defendant Rogers was sentenced, Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack

5

cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Under the Fair Sentencing Act, therefore, in order to trigger the ten years to life sentencing range of Section 841(b)(1)(A)(iii), the offense would have to involve more than 280 grams of crack cocaine.

The changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[4] Because Defendant Rogers had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

### 3. *The First Step Act of 2018*

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simmons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if

---

[4] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Rogers was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

> sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

**1. Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F. Supp. 3d 646 (W.D. Mich. 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and

7

changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At that second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce the eligible defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.* at 653; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing.").

But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653. This means, among other things, that career offenders like Defendant Rogers who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its

discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

### 2. Defendant Rogers is Eligible for a Reduced Sentence

Defendant Rogers is eligible for consideration of a reduced sentence under the First Step Act. Defendant Rogers's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Section 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Rogers. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

The government's position remains that Defendant Rogers is not eligible for a reduced sentence because the quantity of crack cocaine attributable to him still exceeds the 280 grams that are now necessary to trigger the penalty provision in Section 841(b)(1)(A)(iii) that Defendant Rogers was sentenced under. The Court disagrees. As the Court has previously remarked, this argument, rooted in a quantity determination, simply is not part of the analysis for determining

eligibility.[5]  Indeed, nothing within Section 404 of the First Step Act hangs eligibility on a reduced penalty range.

### 3. Scope of Relief

In determining whether to exercise its discretion to reduce Defendant Rogers's sentence, the Court begins with a guideline range comparison.  The table below demonstrates the differences between the guideline calculation for Count 1 as it existed when Defendant Rogers was originally sentenced in 2008 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act, as well as the two departures represented by the Government 5K and Rule 35 motions.

| Count 1 | Original Sentence | First Step Act |
| --- | --- | --- |
| **Base Offense Level**<br><br>2.30 kilograms of cocaine base ("crack" cocaine) | Level 36 (§ 2D1.1(c)(2)) (2008)<br><br>*At least 1.5 KG but less than 4.5 KG of cocaine base* | Level 32 (§ 2D1.1(c)(4)) (2018)<br><br>*At least 840 G but less than 2.8 KG of cocaine base* |
| **Adjustments for Role in Offense**<br><br>*Obstruction of Justice* | +2 levels (§ 3C1.1 cmt. 8 (2008)) | +2 levels (§ 3C1.1 cmt. 8 (2018)) |
| **Adjustments for Acceptance of Responsibility** | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| **Total Drug Offense Level (After Acceptance)** | Level 35 | 31 |
| **Statutory Penalty**<br><br>*Based on charge of 50 grams or more of cocaine base* | 10 years to Life<br><br>*Section 841(b)(1)(A)(iii) (2008)*<br>*50 grams or more of cocaine base* | 5 years to 40 years<br><br>*Section 841(b)(1)(B)(iii) (2018)*<br>*28 grams or more of cocaine base* |
| **Chapter Four Offense Level (After Acceptance)** | Level 34 (§ 4B1.1(b)(A)) (2008)<br><br>*Maximum Life Penalty* | Level 31 (§ 4B1.1(b)(2)) (2018)<br><br>*Maximum 40-year Penalty* |

---

[5] This Court is far from the only court to have held as much.  *See United States v. Burke*, No. 2:08-cr-63(1), 2019 WL 2863403, at *2 (E.D. Tenn. July 2, 2019) (collecting cases).

| Total Offense Level | Level 35 | Level 31 |
|---|---|---|
| **Criminal History w/out Career Offender Enhancement** | Category VI | Category VI |
| **Criminal History with Career Offender Enhancement** | Category VI | Category VI |
| **Guideline Range Before Consideration of Government Motions** | 292 to 365 months (LO 35; CHC VI) | 188 to 235 months (LO 31; CHC VI) |
| **Guideline Range After Consideration of Government's 5K motion (2 level departure)** | 235 to 293 months (LO 33; CHC VI) | 151 to 188 months (LO 29; CHC VI) |
| **Guideline Range After Consideration of Government 5K motion and Rule 35 motion (total of 3 level departure)** | 210 to 262 months (LO 32; CHC VI) | 140 to 175 months (LO 28; CHC VI) |

As the above chart demonstrates, Defendant Rogers's guideline range with respect to Count 1, after consideration of the government's motions, is reduced from 210 to 262 months, to 140 to 175 months. In the main this is because Defendant's base offense level has been reduced four levels under intervening guideline amendments. But in addition, it is because the penalty ranges in Section 841(b)(1)(A)(iii) no longer drive Defendant Rogers's sentence, meaning his career offender offense level is also reduced. Previously the charged offense mandated at least ten years imprisonment and a maximum sentence of life. Applying the Fair Sentencing Act retroactively to the earlier convictions means that section no longer controls Defendant Rogers's sentence. Rather the charged offense for Count 1 now triggers only the five-year minimum and forty year maximum in Section 841(b)(1)(B)(iii).[6] Therefore, when looking back and considering

---

[6] To be sure, the actual offense conduct quantities determined for sentencing may and do involve higher quantities—even quantities high enough under the new thresholds. But the actual offense conduct quantities only inform the Court's discretion on whether to reduce an eligible defendant's

the sentencing array "as if" the Fair Sentencing Act thresholds were in effect, Defendant Rogers's Count 1 conviction must be limited to the penalty ranges of Section 841(b)(1)(B)(iii) (five years to forty years).

After its review of the record, including Defendant Rogers's post-sentencing behavior, the Court elects to exercise its discretion to provide a limited reduction to Defendant Rogers's sentence to 180 months of custody. In evaluating the extent of the reduction, the Court considers the guideline analysis, the factors set forth in § 3553(a), the time Defendant Rogers has already served, and the nature of the original offense conduct. The Court also considers Defendant's record in the BOP. The guideline analysis augers in favor of some reduction, but the seriousness of the underlying offense—including, particularly, Defendant's willingness to let his girlfriend, Ms. Miller, take the fall for him, and his willingness to lie under oath about it—counsels caution. Moreover, despite some work and educational achievement, Defendant Rogers has had significant disciplinary trouble in BOP custody, including multiple misconducts involving substance abuse as recently as February of this year. Considering and balancing all these factors, the court determines to reduce Defendant Rogers's sentence with respect to Count 1 to 180 months imprisonment. All other terms of the original sentence remain unchanged.

The docket reflects that Defendant Rogers was arrested on May 2, 2008 (ECF No. 6). Accordingly, it would appear to the Court that Defendant has been in custody for approximately 136 months. While the decision the Court is entering today would not appear to result in Defendant Rogers's immediate release, given the general availability of good time credits, and out of an abundance of caution, the reduced sentence will be for no less than time served. *See United States*

---

sentence; they do not substitute for a required element of the factual basis for the offense of conviction whether established by jury verdict or guilty plea.

*v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). The Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements, if necessary.

## CONCLUSION

Defendant Rogers's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 31) is granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of 180 months imprisonment, but not less than time served. All other terms of the original sentence, including the 60-month concurrent sentence on Count 3, and the two concurrent terms of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.

Dated:  September 25, 2019         /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE